UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRENDA MCKINNEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:23-cv-01372-TWP-MJD |
| ) | |
| NATIONAL COLLEGIATE ATHLETIC ) | |
| ASSOCIATION, ) | |
| ) | |
| Defendant. ) | |

### ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT AND DENYING AS MOOT CLASS CERTIFICATION MOTIONS

This matter is before the Court on Defendant National Collegiate Athletic Association's ("NCAA") Motion to Dismiss the First Amended Complaint filed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Filing No. 132). Also pending is Plaintiff Brenda McKinney's ("Ms. McKinney") Motion for Class Certification (Filing No. 85) and the NCAA's related Motion to Exclude Exhibits (Filing No. 109). Ms. McKinney is a former basketball player for Grambling State University, a Division I Historically Black College or University ("HBCU"). This action challenges the NCAA's Academic Performance Program, which requires Division I athletes, teams, and schools to achieve certain academic standards or face penalties. Ms. McKinney alleges that the Academic Performance Program discriminates against Black student-athletes and HBCUs in violation of 42 U.S.C. §§ 1981 and 1985. This Court previously dismissed Ms. McKinney's original Complaint for lack of standing (Filing No. 118) but granted her leave to amend. The NCAA now moves to dismiss the First Amended Complaint for lack of standing and failure to state a claim, with prejudice. For the following reasons, the NCAA's Motion to Dismiss the First Amended Complaint is **GRANTED**, and the parties' pending class certification motions are **DENIED as moot**.

## I.  BACKGROUND

Ms. McKinney's First Amended Complaint is similar to her original Complaint, and both pleadings are similar to the complaint in *Manassa v. NCAA*, No. 1:20-cv-3172-RLY-MJD. Ms. McKinney's allegations are therefore adequately recited in the Court's September 2024 order granting the NCAA's Motion to Dismiss (Filing No. 118) (the "September 2024 Order") and the Entry on Defendants' Motion to Dismiss in *Manassa*. No. 20-cv-3172, 2021 WL 12231121 (S.D. Ind. Sept. 13, 2021). The Court will not reiterate those allegations here and will instead only summarize the facts pertinent to the pending motions.

### A.  Factual Background

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of Ms. McKinney as the non-moving party. *See Bielanski v. Cnty. of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

Ms. McKinney is a Black student-athlete who was, as of August 2023, a member of the women's basketball team for Grambling State University, a Division I HBCU (Filing No. 125 ¶ 16). The NCAA, founded in 1906, is the governing body of college sports. *Id.* ¶¶ 22–23, 46. The NCAA's member schools are organized into three divisions, the most prestigious being Division I. *Id.* ¶¶ 24–25. Until 1965, the time of desegregation, the NCAA imposed little to no academic requirements on student-athletes. *Id.* ¶ 65. Since then, the NCAA has revised its academic requirements numerous times. *Id.* ¶¶ 69–84. With each revision, there was significant evidence that the new requirements disproportionately affected Black student-athletes. *Id.*

The NCAA ultimately settled on the Academic Performance Program. Ms. McKinney asserts that the Academic Performance Program is based on metrics that the NCAA knew would directly and negatively affect Black student-athletes, yet the NCAA implemented the system

2

anyway. *Id.* ¶¶ 106–24. In 2011, the NCAA implemented the Academic Performance Program's current penalty structure, and it did so knowing that it would more heavily impact HBCUs than predominantly white institutions ("PWIs"). *Id.* ¶ 125–37. The Academic Performance Program implements a three-level system of progressive and cumulative penalties. *Id.* ¶ 99. Level one and level two penalties consist of practice time restrictions, *id.* ¶¶ 101–02, and level three penalties include "financial aid penalties, practice and contest reductions, recruiting restrictions, incoming student practice restrictions, or postseason competition bans." *Id.* ¶ 103.

**B.     Procedural History**

    1.  *Manassa v. NCAA*

In December 2020, the same counsel representing Ms. McKinney filed a class action lawsuit against the NCAA, similarly alleging that the Academic Performance Program discriminates against Black student-athletes and HBCUs. *Manassa v. NCAA*, No. 1:20-cv-3172-RLY-MJD ("*Manassa*"). The named plaintiffs—Manassa, Dasent, and Freeman—were current or former Division I HBCU student-athletes. Manassa and Dasent were subject to Academic Performance Program penalties while they were student-athletes but were not student-athletes at the time they filed suit. Freeman, like Ms. McKinney, was a student-athlete when she filed suit but had not been subjected to any penalties. *Manassa*, No. 20-cv-3172, 2021 WL 12231121, at *1 (S.D. Ind. Sept. 13, 2021). The NCAA moved to dismiss the plaintiffs' claims on several grounds, and the Court denied the NCAA's motion as to Manassa and Dasent but granted it as to Freeman for lack of standing, explaining that the risk of future penalties was too speculative to establish a concrete and particularized injury. *Id.* at *5–6. The parties then stipulated to the dismissal of Dasent, leaving Manassa as the sole named plaintiff.

Manassa moved for class certification, and the NCAA moved for summary judgment. While those motions were pending, Ms. McKinney initiated this action. The following Monday,

she moved to intervene in *Manassa*, seeking to substitute herself for Freeman, but the *Manassa* Court denied her motion to intervene. *Manassa*, No. 20-cv-3172, 2023 WL 5722677, at *2 (S.D. Ind. Sept. 5, 2023). The NCAA's motion for summary judgment was granted and Manassa's motion for class certification was denied. *Manassa*, 2023 WL 10367398, at *3. The *Manassa* plaintiffs have appealed the orders on the NCAA's motion to dismiss, and summary judgment ruling; and Ms. McKinney has appealed the denial of her motion to intervene, (*Manassa*, Dkt. 304–306). That consolidated appeal is currently pending before the Seventh Circuit Court of Appeals. *Manassa v. NCAA*, No. 24-1373 (7th Cir. Mar. 11, 2024).

**2.   The Instant Lawsuit**

Ms. McKinney's original Complaint in this action was largely identical to the complaints in *Manassa* (Filing No. 1). After the Court dismissed Freeman's claims for lack of standing, the NCAA moved to dismiss Ms. McKinney's claims for the same reason. While the NCAA's motion to dismiss was pending, Ms. McKinney filed the pending Motion to Certify Class (Filing No. 85), which elicited the NCAA's Motion to Exclude Exhibits (Filing No. 109).

In September 2024, the Court granted the NCAA's Motion to Dismiss the original Complaint for lack of standing (Filing No. 118). Although Ms. McKinney insisted that this action, unlike *Manassa*, is not about Academic Performance Program penalties, the Court found that her claims plainly arose from the risk of penalties similar to the claims in *Manassa*, and she, like Freeman, lacked standing because the risk of penalties was too remote. *Id.* at 13–14. The Court further explained that although Ms. McKinney generally referred to "barriers to competing in collegiate athletics," she had failed to identify any barrier imposed by the Academic Performance Program other than its penalties. The dismissal was without prejudice, and Ms. McKinney was granted leave to amend her complaint.

In October 2024, Ms. McKinney filed her First Amended Complaint, which focuses solely on the barriers to equal opportunity imposed by the Academic Performance Program itself, rather than those imposed by its penalties (Filing No. 125). The following month, the NCAA filed the instant Motion to Dismiss for lack of standing and failure to state a claim (Filing No. 132). The Motion to Dismiss, Motion to Certify Class, and Motion to Exclude Exhibits are all ripe for review.

## II. LEGAL STANDARDS

### A. Standard for Dismissal under Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The burden of proof is on the plaintiff, the party asserting jurisdiction. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012) (en banc). "The plaintiff has the burden of supporting the jurisdictional allegations of the complaint by competent proof." *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir. 1980). "In deciding whether the plaintiff has carried this burden, the court must look to the state of affairs as of the filing of the complaint; a justiciable controversy must have existed at that time." *Id.*

"When ruling on a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995) (citation omitted). Furthermore, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (citation and quotation marks omitted).

B.     **Standard for Dismissal under Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633. However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("[I]t is not enough to give a threadbare recitation of the elements of a claim without factual support."). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). The complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

C.     **Class Certification under Rule 23**

Federal Rule of Civil Procedure 23 governs class action lawsuits. To certify a class, plaintiffs must first satisfy the four prerequisite requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 24(a)(1)–(4). Before evaluating the Rule

23 requirements, the court must first determine whether the class is identifiable. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). A class is identifiable if class membership can be readily determined by reference to objective criteria. *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 496 (7th Cir. 2012). If successful in that regard, a plaintiff must then show that the circumstances of her case fit one of the three "types" of class actions which Rule 23(b) defines.

### III.  DISCUSSION

The Court will first address the Motion to Dismiss and then the class certification motions.

**A.  Motion to Dismiss the First Amended Complaint**

The NCAA argues that Ms. McKinney's claims should be dismissed for lack of standing and for failure to state a claim. The Court reaches only the standing issue, as it is dispositive. "From Article III's limitation of the judicial power to resolving 'Cases' and 'Controversies,' and the separation-of-powers principles underlying that limitation, [the Supreme Court] ha[s] deduced a set of requirements that together make up the 'irreducible constitutional minimum of standing.'" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). This constitutional minimum is jurisdictional. *See Dunnet Bay Constr. Co. v. Borggren*, 799 F.3d 676, 688 (7th Cir. 2015). To establish Article III standing, a plaintiff must show:

> (1) [she] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (citation and quotation marks omitted).

The NCAA argues that Ms. McKinney has failed to allege any concrete or particularized injury as a result of the Academic Performance Program; that HBCU student-athletes' comparative difficulty in meeting the Academic Performance Program's standards is not traceable to the

7

Academic Performance Program or the NCAA; and that Ms. McKinney never suffered the only injury that is traceable to the Academic Performance Program—penalties (Filing No. 133 at 15). Ms. McKinney responds that "'the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain [a] benefit may be an injury-in-fact that is concrete, particularized, and actual," so the fact that she never received penalties is irrelevant to determining whether she has been injured (Filing No. 134 at 8 (quoting *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993))).

Ms. McKinney identifies two types of barriers imposed by the Academic Performance Program: barriers to meeting the Academic Performance Program standards; and barriers to participating and competing in intercollegiate athletics (Filing No. 134 at 3, 10). Importantly, the NCAA did not erect the first type of barrier. *See Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490, 500 (7th Cir. 2005) ("The causation element of standing demands that the injury be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" (cleaned up) (quoting *Lujan*, 504 U.S. at 560–61)). As the Court explained in its September 2024 Order, "the barriers to *meeting* Academic Performance Program standards are not caused by the Academic Performance Program itself." (Filing No. 118 at 15 (emphasis in original)). Stated differently, the Academic Performance Program does not make it more difficult for Black student-athletes to meet its standards than PWI student-athletes; according to the First Amended Complaint, the disparity in funding and resources between HBCUs and PWIs does (Filing No. 125 ¶¶ 18, 62–64). The Court does not intend to "blame HBCUs for their lack of resources" (Filing No. 134 at 10), and at this stage of the proceedings accepts that the NCAA knew that HBCUs lacked the resources of PWIs to provide academic support when it set the allegedly discriminatory APP standards. However, the

8

Academic Performance Program itself does not erect any barriers to meeting its standards. Even if the NCAA knew that HBCU student-athletes may be less likely than PWI student-athletes to ultimately meet the Academic Performance Program standards, that knowledge alone is not enough to establish standing. Ms. McKinney must show that she was subjected to some type of unequal treatment in meeting those standards. *See City of Jacksonville*, 508 U.S. at 666 (stating an injury in fact is "not the ultimate inability to obtain the benefit").

The second barrier Ms. McKinney identifies is the barrier to equal participation and competition in intercollegiate athletics. But the existence of the Academic Performance Program does not create any such barrier. Rather, as the Court explained in the September 2024 Order, the Academic Performance Program *penalties* present the barrier to equal participation and competition in intercollegiate athletics (Filing No. 118 at 15–16). If Black student-athletes achieve the standards and avoid penalties, like Ms. McKinney and Grambling State did, then there is no barrier to their equal participation and competition in intercollegiate athletics. *See Johnson v. U.S. Office of Personnel Mgmt.*, 783 F.3d 655, 665 (7th Cir. 2015) ("The mere allegation of unequal treatment, absent some kind of actual injury, is insufficient to create standing."). So, although the Academic Performance Program *could* deny an HBCU student-athlete the equal opportunity to compete with PWI student-athletes, it did not deny Ms. McKinney that opportunity.

Ms. McKinney cites several cases supporting her argument that the Academic Performance Program itself denies her equal treatment, and the fact that she was subjected to it at all establishes standing (Filing No. 134 at 8). But in each of the cited cases, the defendant is the one who imposed the alleged barrier to the plaintiff's equal opportunity to compete, and the barrier created more than a conjectural or hypothetical risk of injury. *See Texas v. Lesage*, 528 U.S. 18 (1999) (alleging that state university's race-conscious Ph.D. application program denied the plaintiff the ability to

9

compete on equal footing with non-white applicants); *City of Jacksonville*, 508 U.S. 656 (alleging ordinance that permitted only minority owned businesses to bid on city contracts created a barrier to plaintiffs' ability "to compete on an equal footing in the bidding process"); *Adarand Constructors v. Pena*, 515 U.S. 200 (1995) (alleging that government policy explicitly favoring minority-owned subcontractors resulted in plaintiff being treated less favorably in bidding process); *Lac Du Flambeau*, 422 F.3d 490 (alleging that gaming compact between state and one native tribe placed plaintiff at a competitive disadvantage when seeking state approval for off-reservation gaming); *Hassan v. City of New York*, 804 F.3d 277 (3d Cir. 2015) (alleging that city surveillance program targeting Muslim individuals and businesses subjected plaintiffs to unequal treatment on the basis of their religion); *Davis v. Guam*, 785 F.3d 1311 (9th Cir. 2015) (alleging that Guam law permitting only "Native Inhabitants" to register to vote in plebiscites denied plaintiff equal treatment under Guam law on the basis of his race); *The Am. Civil Liberties Union of N.M. v. Santillanes*, 546 F.3d 1313 (10th Cir. 2008) (alleging that state law requiring in-person voters, but not absentee voters, to present photo identification subjected in-person voters to unequal treatment); *Lutheran Church-Missouri Synod v. FCC*, 154 F.3d 487 (D.C. Cir. 1998) (alleging that governmental racial hiring preferences caused economic harm to plaintiff and forced plaintiff to discriminate); *Peyote Way Church of God, Inc. v. Thornburgh*, 922 F.2d 1210 (5th Cir. 1991) (alleging that state and federal laws exempting only Native American Church members from prohibition on peyote possession subjected members of plaintiff's church to unequal treatment); *cf. Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) (explaining that a "concrete" injury may be "intangible," but that a plaintiff may not "allege a bare procedural violation, divorced from any concrete harm"; reversing Ninth Circuit's decision but declining to take a position as to whether plaintiff had standing); *Robins v. Spokeo, Inc.*, 867 F.3d 1108 (9th Cir. 2017) (finding standing,

10

on remand, where plaintiff alleged that credit reporting agency inaccurately reported information about plaintiff in violation of FCRA).

Here, by contrast, the NCAA did not impose the barrier to Ms. McKinney's equal opportunity to meet the Academic Performance Program standards; the Academic Performance Program itself does not impose barriers to Ms. McKinney's equal opportunity to participate and compete in intercollegiate athletics; and Ms. McKinney has alleged only a conjectural risk that Academic Performance Program penalties will deny her an equal opportunity to participate and compete in intercollegiate athletics. *Johnson*, 783 F.3d at 665–66 (dismissing complaint for lack of standing; "We have been unable to find any case in which a plaintiff was deemed to have standing based solely on being treated differently. At the very least, plaintiffs must show that the challenged classification creates a 'barrier that makes it more difficult for members of one group to obtain a benefit,' or causes 'non-economic injuries' such as 'stigmatizing members of the disfavored group.'" (quoting *City of Jacksonville*, 508 U.S. at 666)).

Ms. McKinney notes that the Court cited the above cases in *Manassa* "when denying Defendant's motion to dismiss Plaintiffs Manassa and Dasent on standing grounds." (Filing No. 134 at 8). But, importantly, the plaintiffs' alleged injuries in *Manassa* arose from the imposition of penalties under the Academic Performance Program. *Manassa*, 2021 WL 12231121, at *4 (S.D. Ind. Sept. 13, 2021). That is why Manassa and Dasent, who did experience penalties, had standing, but plaintiff Freeman, who did not, lacked standing. The existence of the Academic Performance Program was not enough to establish plaintiff Freeman's standing, and it is not enough to establish Ms. McKinney's standing. *Id.* at 4–6; *see Clay v. Fort Wayne Cmty. Sch.*, 76 F.3d 873, 879 (7th Cir. 1996) ("[N]othing suggests that [the Black plaintiffs alleging racial discrimination] suffered

11

anything other than indignation: personal offense from the knowledge that unconstitutional conduct is occurring. Indignation is not an injury-in-fact sufficient to confer standing.").

Ms. McKinney also alleges, as she did in her response to the NCAA's motion to dismiss her original Complaint, that she and the putative class members were and continue to be "discriminated against by the barrier the [Academic Performance Program] imposes – and all that the barrier brings even if they surpass it and go on to achieve success under the [Academic Performance Program]" because they are "held to higher, more burdensome academic standards – demanding more study time, more stress, less playing time, inflicting emotional harm, and saddling them with difficulties PWI student-athletes do not face." (Filing No. 125 ¶ 188; Filing No. 31 at 8 (emphases omitted)). The Court previously rejected this argument in its September 2024 Order, explaining that "the Academic Performance Program only requires this additional work and stress *to avoid postseason penalties*. Absent the risk of postseason penalties, there would be no injury to HBCU student-athletes." (Filing No. 118 at 16 (emphasis in original) (citation omitted)).

Ms. McKinney's First Amended Complaint, when taking the allegations as true, describes how the NCAA instituted the Academic Performance Program to systemically disadvantage HBCUs and Black student-athletes and unfairly siphon money and resources to PWIs, and that the NCAA continues to apply this program despite knowing that it disproportionately affects HBCU student-athletes. While this may be true, Ms. McKinney has not shown that she is the right plaintiff to pursue claims against the NCAA. Her First Amended Complaint, like her original Complaint, fails to identify a concrete and particularized injury to Ms. McKinney that is fairly traceable to the Academic Performance Program or the NCAA. Accordingly, she lacks standing, and the NCAA's Motion to Dismiss the First Amended Complaint is **granted**.

B.  **Class Certification Motions**

Because the Court has determined that Ms. McKinney lacks standing, her individual claims and class claims must be dismissed. As the Court explained in its September 2024 Order, Ms. McKinney "cannot use an exception to mootness to save her claims from dismissal if she lacked standing from the start." (Filing No. 118 at 17); *see, e.g.*, *Pugh v. NCAA*, No. 15-cv-1747, 2016 WL 5394408, at *5 (S.D. Ind. Sept. 27, 2016) (finding the plaintiff's "inherently transitory" arguments persuasive but denying class certification because "at no point in the life of this case, did [plaintiff] have standing to seek injunctive relief"); *Rock v. NCAA*, No. 12-cv-1019, 2016 WL 1270087, at *16 (S.D. Ind. Mar. 31, 2016) (same). Accordingly, Ms. McKinney's Motion to Certify Class, and the NCAA's Motion to Exclude Exhibits, are therefore **denied as moot**.

## IV.   CONCLUSION

For the above reasons, the Court **GRANTS** the NCAA's Motion to Dismiss the First Amended Complaint (Filing No. 132) and **DENIES as moot** Ms. McKinney's Motion to Certify Class (Filing No. 85) and the NCAA's Motion to Exclude Exhibits (Filing No. 109). Because Ms. McKinney lacks standing, her claims must be **DISMISSED without prejudice**. However, the Court will not enter final judgment at this time and *sua sponte* **GRANTS** Ms. McKinney **forty-five (45) days from the date of this Entry** to substitute an appropriate named plaintiff (if one exists) in a second amended complaint. If nothing is filed within that time, then this action will be dismissed without prejudice for lack of subject-matter jurisdiction, and final judgment will issue without further notice.

**SO ORDERED**.

Date: 3/31/2025

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

13

Distribution:

Alicia Barrs
Barnes & Thornburg LLP
alicia.barrs@btlaw.com

Brian Eugene Casey
Barnes & Thornburg LLP
brian.casey@btlaw.com

Russell B. Cate
RILEYCATE, LLC
rcate@rileycate.com

Ashali Chimata
Fegan Scott LLC
Ashali@feganscott.com

Valerie Chisara Ezie-Boncoeur
BARNES & THORNBURG LLP
cezie@btlaw.com

Elizabeth A. Fegan
FEGAN SCOTT, LLC
beth@feganscott.com

Autumn C Gear
Barnes & Thornburg LLP
autumn.gear@btlaw.com

Anna Kalinina
Barnes & Thornburg LLP
anna.kalinina@btlaw.com

Jonathan David Lindenfeld
Fegan Scott LLC
jonathan@feganscott.com

Jessica Meeder
May Jung
jessica@mayjung.com

William N. Riley
RileyCate, LLC
wriley@rileycate.com

Sundeep Singh
RileyCate LLC
ssingh@rileycate.com

Victor D Vital
Haynes and Boone LLP
victor.vital@haynesboone.com

Jake Winslett
Barnes & Thornburg LLP
jake.winslett@btlaw.com